# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Fields*, 2011 IL App (1st) 100169

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. NATHSON FIELDS, Defendant-Appellee. |
| District & No. | First District, Sixth Division<br>Docket No. 1-10-0169 |
| Filed | September 30, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The circuit court's grant of defendant's petition for a certificate of innocence was reversed and remanded with instructions to determine whether defendant showed by a preponderance of evidence that he is innocent of the charged offenses. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 85-C-7651; the Hon. Paul P. Biebel, Judge, presiding. |
| Judgment | Reversed and remanded with instructions. |

| Counsel on Appeal | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Assistant State's Attorney, of counsel), for the People. |
|---|---|
| | Leonard C. Goodman and Milissa A. Matuzak, both of Len Goodman Law Office, of Chicago, for appellee. |
| Panel | JUSTICE CAHILL delivered the judgment of the court, with opinion. Presiding Justice R. Gordon and Justice Garcia concurred in the judgment and opinion. |

**OPINION**

¶ 1    The State appeals from an order of the circuit court granting defendant Nathson Fields a certificate of innocence. We reverse and remand with instructions.

¶ 2    In June 1985, defendant was charged along with codefendants Earl Hawkins and George Carter with the April 1984 murders of Jerome "Fuddy" Smith and Talman Hickman. Defendant and Hawkins were tried together. After a bench trial before Judge Thomas Maloney, defendant and Hawkins were found guilty of murder and later sentenced to death. Our supreme court affirmed those convictions on direct appeal. See *People v. Fields*, 135 Ill. 2d 18, 552 N.E.2d 791 (1990).

¶ 3    Defendant filed an amended postconviction petition for a new trial on September 8, 1992, alleging he was denied a fair trial because Judge Maloney accepted a $10,000 bribe to acquit Hawkins and defendant of the murders but returned the money and convicted the pair once he perceived that the Federal Bureau of Investigation (FBI) was watching him. Defendant's claim was based on a June 26, 1991, federal grand jury indictment of Maloney.

¶ 4    On April 16, 1993, Maloney was found guilty of violations of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C § 1961 *et seq.* (1994)), conspiracy to commit extortion and obstruction of justice in connection with a scheme to fix cases in his courtroom, including this one. See *United States v. Maloney*, 71 F.3d 645 (7th Cir. 1995) (*en banc*). The prosecution proved that during the course of defendant's trial, Maloney accepted a bribe, only to return the money and convict defendant and Hawkins when he perceived that the FBI was investigating him.

¶ 5    On September 18, 1996, the trial court granted defendant's petition, vacated his conviction and sentence and ordered a new trial. Our supreme court affirmed that order on direct appeal. See *People v. Hawkins*, 181 Ill. 2d 41, 690 N.E.2d 999 (1998).

¶ 6    On remand, the parties filed numerous motions before the new trial. The court denied the

State's motion *in limine* to admit evidence relating to defendant's knowledge of the bribe to Judge Maloney. The State brought an interlocutory appeal from the court's decision. We found the trial court did not err in denying the bribery evidence because there was no testimony linking defendant to the bribery activity. See *People v. Hawkins*, 326 Ill. App. 3d 992, 762 N.E.2d 46 (2001).

¶ 7 After our ruling, the State entered into a plea agreement with Hawkins. During the agreement negotiations, Hawkins said that he, defendant and both of their attorneys discussed the details of how to bribe Judge Maloney. Based on this evidence, the State renewed its motion to admit bribery evidence against defendant. The court denied the motion and the State brought another interlocutory appeal. We affirmed, finding the State did not exercise due diligence in obtaining the evidence. See *People v. Fields*, 357 Ill. App. 3d 780, 829 N.E.2d 917 (2005).

¶ 8 After a 2009 bench trial before Judge Vincent M. Gaughan, defendant was found not guilty of the murders. In announcing its decision, the court noted that there was no unimpeached witness identifying defendant as one of the gunmen. Under these circumstances, the court found the State failed to prove defendant guilty beyond a reasonable doubt.

¶ 9 Defendant then filed a petition for a certificate of innocence under section 2-702 of the Code of Civil Procedure (Code) (735 ILCS 5/2-702 (West 2008)), seeking compensation for the 18 years he spent in prison. In support of the petition, defendant attached his own affidavit, averring that he is innocent of the murders. Defendant also attached to the petition the stipulated-to description of the gunmen from retrial given by Sandra Langston to police on the day of the shooting. The description did not match defendant's appearance. The State filed a motion for leave to intervene and object to the issuance of the certificate. The State claimed that defendant was unable to show by a preponderance of evidence that he is innocent of the murders as required by section 2-702 of the Code. Defendant responded, arguing that he had maintained his innocence since the inception of the case.

¶ 10 At the hearing on the petition, the court recounted the history of the case and heard arguments from the parties. The State argued that defendant's affidavit was insufficient to show by a preponderance of evidence that he is innocent of the murders in light of the testimony presented at retrial indicating he was one of the shooters. Defendant argued that Langston's stipulated-to testimony at retrial was sufficient to exonerate him. The court continued the matter to review the transcripts of defendant's trials, the four opinions entered in the case, section 2-702 of the Code and other materials it deemed relevant.

¶ 11 When the case was recalled, the court recounted the extensive history of the case, the evidence presented at retrial and Judge Gaughan's reasoning for finding defendant not guilty. The court also outlined the four factors defendant was required to show by a preponderance of evidence to obtain a certificate of innocence under section 2-702 of the Code. In determining whether defendant showed he was actually innocent of the murders, the court noted:

> "There is no doubt that Judge Gaughan found beyond a reasonable doubt that

[defendant] was not guilty of the charges that were tried in 2009.

Can I look behind his finding and provide a judgment on actual innocence on the basis of what I might think? What I might imagine? Or do I take the case as I find it. And I have to take the case as I find it."

The court went on to point out:

"In the criminal justice system it's not what we think. It's not what we surmise. It's not what we conjure. It's what was proved. And on the basis of the record that was before Judge Gaughan, which is based on *** four opinions of reviewing courts, he found that [defendant] was not guilty.

I will follow that finding of Judge Gaughan, and find that the petition for certificate of innocence is well grounded here, and will so grant it over the objection of the State."

¶ 12    On the day after the hearing, December 10, 2009, the court entered a written order, finding defendant satisfied the statutory elements necessary to obtain a certificate of innocence under section 2-702 of the Code. The order noted that it supersedes the oral order entered on the record at the hearing. On December 11, 2009, the court entered another written order, clarifying some of its oral pronouncements from the December 9, 2009, hearing on defendant's petition. The court clarified that "Judge Gaughan's actual finding was that the State failed to prove [defendant] guilty beyond a reasonable doubt, not that defendant was not guilty beyond a reasonable doubt."

¶ 13    The State appeals from the court's December 10, 2009, order, granting defendant's petition for a certificate of innocence. To obtain a certificate of innocence under section 2-702, a defendant must prove by a preponderance of evidence that:

"(1) [he] was convicted of one or more felonies by the State of Illinois and subsequently sentenced to a term of imprisonment, and has served all or any part of the sentence;

(2) (A) the judgment of conviction was reversed or vacated, and the indictment or information dismissed or, if a new trial was ordered, either [he] was found not guilty at the new trial or [he] was not retried and the indictment or information dismissed; ***;

(3) [he] is innocent of the offenses charged in the indictment or information ***; and

(4) [he] did not by his or her own conduct voluntarily cause or bring about his or her conviction." 735 ILCS 5/2-702(g) (West 2008).

¶ 14    The State argues that the trial court erred in granting defendant's petition because the court equated Judge Gaughan's finding of not guilty with the determination that defendant is actually innocent of the murders. The State claims that under the plain language of section 2-702, the legislature intended proof of actual innocence to be distinct from an earlier acquittal.

¶ 15    Defendant does not challenge the State's interpretation of section 2-702 but argues that

the court understood and applied the correct standard of proof because its December 10, 2009, written order expressly notes that defendant had shown by a preponderance of evidence that "[he] is innocent of the first degree murders of Jerome Smith and Talman Hickman on April 28, 1984." Defendant also argues that this appeal is moot because on June 24, 2010, he received a compensation check from the Illinois Court of Claims for his "illegal incarceration." He claims that even if the circuit court erred in granting his petition for a certificate of innocence, it is too late to reverse that judgment because the issuance of the check by the court of claims renders it impossible for this court to grant effective relief to the State.

¶ 16        We first consider defendant's argument that this appeal is moot. After the State filed its notice of appeal, defendant filed a motion to dismiss the appeal as moot, raising the same argument he does in this court. We granted the motion. The State then filed a motion to vacate our order dismissing the appeal. The State argued, as it does now, that even though defendant received payment from the court of claims the appeal is not moot because a ruling by this court on the propriety of the issuance of a certificate of innocence to defendant would have significant consequences for both parties. The State pointed out that defendant has a pending federal civil rights lawsuit against the City of Chicago and Cook County, as well as numerous current and former Chicago police officers and assistant State's Attorneys. The suit relies on defendant's certificate of innocence to support his claim of malicious prosecution. The State also pointed out that, although defendant received payment from the court of claims, he could be required to repay those funds if the certificate of innocence was found to have been improperly granted. We granted the State's motion and reinstated the appeal.

¶ 17        We reject defendant's renewed argument to dismiss the appeal. The parties' current arguments to this court are identical to the ones they raised in their earlier motions. We considered those arguments and the State prevailed. Our earlier decision to grant the State's motion and reinstate the appeal is now the law of the case. See *People v. Klepper*, 234 Ill. 2d 337, 346, 917 N.E.2d 381 (2009). We will address the case on the merits.

¶ 18        The fundamental rule of statutory interpretation is to give effect to the intent of the legislature. *People v. Smith*, 236 Ill. 2d 162, 166-67, 923 N.E.2d 259 (2010). The best indicator of legislative intent is the language of the statute, which must be given its plain and ordinary meaning. *Smith*, 236 Ill. 2d at 167. If the language in the statute is clear and unambiguous it must be applied as written without resorting to extrinsic aids of construction. *People v. Dabbs*, 239 Ill. 2d 277, 287, 940 N.E.2d 1088 (2010). The interpretation of a statute is a question of law that is reviewed *de novo*. *Smith*, 236 Ill. 2d at 167.

¶ 19        Defendant does not dispute and we agree with the State that the plain language of section 2-702 shows the legislature's intent to distinguish between a finding of not guilty at retrial and actual innocence of the charged offenses. Although the court's written order notes that defendant had shown by a preponderance of evidence that he is innocent of the murders, the record shows that in granting defendant's petition the court did not distinguish between a finding of not guilty and actual innocence as required by the statute. The court's comments at the hearing on the petition that it could not "look behind [Judge Gaughan's] finding and

provide a judgment on actual innocence" and that it would "follow the finding of Judge Gaughan" in granting defendant's petition show the court equated a finding of not guilty at retrial with defendant's actual innocence. Although the court entered a written order clarifying that Judge Gaughan's actual finding was that the State failed to prove defendant guilty beyond a reasonable doubt, not that defendant was not guilty beyond a reasonable doubt, there is no indication that the court considered anything but the result of defendant's retrial in determining his innocence. We believe that under section 2-702 in determining whether defendant showed by a preponderance of evidence that he is innocent of the murders, the court was required to consider the materials attached to defendant's petition in support of his innocence claim–his affidavit and the stipulated-to testimony of Sandra Langston–in relation to the evidence presented against him at both trials. The court erred in not doing so. We reverse and remand to the circuit court for this determination.

¶ 20        Reversed and remanded with instructions.